# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS

No. 09-530V
Filed: May 10, 2017

```
* * * * * * * * * * * * * * *
VINCENT F. DIFAZIO,                *
                                   *          Special Master Sanders
               Petitioner,         *
                                   *          Attorney's Fees and Costs;
        v.                         *          Reasonable Hourly Rate; Reasonable
                                   *          Costs; Fees for Travel; Fees for
SECRETARY OF HEALTH                *          Former Counsel; Fees for Family.
AND HUMAN SERVICES,                *
                                   *
               Respondent.         *
* * * * * * * * * * * * * * *
```

<u>Franklin J. Caldwell, Jr.</u>, Maglio, Christopher & Toale, Sarasota, FL, for Petitioner.
<u>Darryl R. Wishard</u>, United States Department of Justice, Washington, DC, for Respondent.

## DECISION AWARDING ATTORNEYS' FEES AND COSTS[1]

On August 12, 2009, Vincent F. DiFazio ("Petitioner") filed a petition for compensation pursuant to the National Vaccine Injury Compensation Program.[2]  42 U.S.C. §§ 300aa-10 to -34 (2012).  Petitioner alleged that as a result of a tetanus vaccine administered on August 17, 2006, he suffered brachial neuritis ("BN").  Pet. 1, ECF No. 1.

On November 30, 2016, Special Master Hamilton-Fieldman issued a Decision on the parties' proffer on damages.  Decision Proffer, ECF No. 110.  On April 4, 2017, Petitioner submitted a Motion for Attorneys' Fees.  Mot. Att'ys' Fees, ECF No. 118.  The next day, April 5, 2017, Respondent submitted his Response.  Resp't Resp., ECF No. 119.  Petitioner filed his Reply on that same day.  Pet'r's Reply, ECF No. 120.  Petitioner's Motion is now ripe, and after careful consideration, the undersigned grants Petitioner's Motion for Attorneys' Fees in part.

---

[1] This decision shall be posted on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).  In accordance with Vaccine Rule 18(b), a party has 14 days to identify and move to delete medical or other information that satisfies the criteria in § 300aa-12(d)(4)(B).  Further, consistent with the rule requirement, a motion for redaction must include a proposed redacted decision.  If, upon review, the undersigned agrees that the identified material fits within the requirements of that provision, such material will be deleted from public access.

[2] The Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended, 42 U.S.C. §§ 300aa-10 et seq. (2012) [hereinafter "Vaccine Act" or "the Act"].  Hereinafter, individual section references will be to 42 U.S.C. § 300aa of the Act.

## I.    PROCEDURAL HISTORY

Prior to Special Master Hamilton-Fieldman's ruling on the parties' proffer, she presided over two hearings in this case.  *See* Docket Rep.  The first hearing, on January 9, 2014, was held to determine whether Petitioner in fact received a tetanus vaccine on August 17, 2006.  *See* Sched. Order, ECF No. 45.  After the hearing, Special Master Hamilton-Fieldman "found it more likely than not" that Petitioner received the tetanus vaccination.  *Id.* at 2.  She also held that Petitioner's claim fell within the time frame set forth in the Vaccine Injury Table, and therefore created a "rebuttable presumption of causation" in Petitioner's favor.  *Id.*  Respondent consequently conceded that Petitioner was entitled to compensation.  Resp't Rep., ECF No. 48.

On February 3, 2014, Special Master Hamilton-Fieldman issued a damages order, encouraging the parties "to informally resolve the elements of Petitioner's damages."  Decision Proffer 2.  However, the parties were unable to reach a settlement, and Special Master Hamilton-Fieldman presided over a damages hearing on October 12 and 13, 2016.  *Id.*  After the hearing, the parties submitted a proffer to Special Master Hamilton-Fieldman, who issued a decision awarding Petitioner compensation for his vaccine injury.  *Id.*

In Petitioner's subsequent Motion for Attorneys' Fees, he requested $137,523.10 in fees and $90,439.07 in costs, totaling $227,962.17.  Pet'r's Mot. Att'ys' Fees.  Petitioner's counsel, Franklin John Caldwell, Jr., requested an hourly rate of $300 for work completed in the years 2011 through 2015.  Pet'r's Ex. 35 at 26, ECF No. 118-1.  For 2016, Mr. Caldwell increased his hourly rate to $356, and for 2017, Mr. Caldwell increased his rate to $367 per hour.  *Id.*  Three other attorneys submitted hours related to their work in this case.  *Id.*  Anne C. Toale, an attorney in Mr. Caldwell's firm, requested $300 per hour for work performed in 2011.  *Id.*  Diana L. Stadelnikas, another attorney with Mr. Caldwell's firm, requested an hourly rate of $300 for work performed in 2015.  *Id.*  Christina E. Unkel, the fourth attorney that submitted hours in this case, requested an hourly rate of $200 for her work completed in 2016.  *Id.*  Mr. Caldwell also requested hourly rates of $95, $105, $135, and $145 for the work of his firm's paralegals, respective to the paralegal's experience and whether the paralegal is "Registered" or "Certified." *Id.*  Mr. Caldwell similarly requests $145 per hour for the work performed by Jessica Olins, a law clerk in his firm.  *Id.*

Petitioner's Motion for costs included an invoice from his expert, Dr. Thomas Morgan, for $7,100.  Pet'r's Ex. 36 at 21, ECF No. 118-2.  Dr. Morgan requested an hourly rate of $400 for his work.  *Id.*  Petitioner's Motion also included invoices from CliftonLarsonAllen, LLP, the accounting firm hired by Petitioner to support his damages claims.  *Id.* at 63, 66, 68, 71, 78, 100.  CliftonLarsonAllen's invoices total $63,975.85.[3]  *See id.* at 63, 66, 68, 71, 78, 100.  Additionally, Petitioner's Motion included a statement from Petitioner's father and former counsel, Salvatore DiFazio.  Pet'r's Ex. 37, ECF No. 118-3.  Mr. DiFazio requested an hourly rate of $385 for 25.7 hours of work, totaling $9,980.34.  *Id.*  Finally, Petitioner's Motion included a statement averring

---

[3] This total represents the subtotals for the six invoices sent by CliftonLarsonAllen.  Their respective totals are: $9,205.00 for April 28, 2016, Pet'r's Ex. 36 at 63; $970.00 for May 24, 2016, Pet'r's Ex. 36 at 66; $11,915.00 for July 26, 2016, Pet'r's Ex. 36 at 68; $19,786.84 for September 29, 2016, Pet'r's Ex. 36 at 71; $21,948.00 for October 24, 2016, Pet'r's Ex. 36 at 78; and $151.01 for January 13, 2017, Pet'r's Ex. 36 at 100.

that Petitioner did not incur any personal costs during the litigation of this case.  Pet'r's Ex. 122, ECF No. 84-3.

Respondent's response recommended for the undersigned to "exercise her discretion and determine a reasonable award for attorneys' fees and costs."  Resp't Resp. 3.  Petitioner's Reply claimed that Respondent's position burdened the Court and prejudiced Petitioner.  Pet'r's Reply 2.  Without specific objections from Respondent, Petitioner argued, the Court determines fee applications without allowing petitioners the opportunity to respond to any "issues or misperceptions."  *Id.*  Petitioner then argued that his requested rates are reasonable and that he should therefore be awarded his request in full.  *Id.* at 3-5.

This matter is now ripe for a decision.  For the reasons articulated below, the undersigned awards Petitioner $142,412.10 for attorneys' fees and costs in full, for a total award of $232,851.17.

## II.       STANDARDS FOR ADJUDICATION

The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act.  *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1348 (Fed. Cir. 2008).  This is a two-step process.  *Id.*  First, a court determines an "initial estimate . . . by 'multiplying the numbers of hours reasonably expended on the litigation times a reasonable hourly rate.'"  *Id.* at 1347-48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)).  Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings.  *Id.* at 1348.

It is "well within the special master's discretion" to determine the reasonableness of fees. *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521-22 (Fed. Cir. 1993); *see also Hines v. Sec'y of Health & Human Servs.*, 22 Cl Ct. 750, 753 (1991) ("[T]he reviewing court must grant the special master wide latitude in determining the reasonableness of both attorneys' fees and costs.").  Applications for attorneys' fees must include contemporaneous and specific billing records that indicate the work performed and the number of hours spent on said work. *See Savin v. Sec'y of Health & Human Servs.*, 85 Fed. Cl. 313, 316-18 (2008).  Attorneys may be awarded fees for travel if they provide adequate documentation that they performed legal work during that travel.  *Gruber v. Sec'y of Health & Human Servs.*, 91 Fed. Cl. 773, 791 (2010).  An award of attorneys' fees to a family member of a petitioner is appropriate where there is evidence that an attorney-client relationship existed between the petitioner and family member. *Underwood v. Sec'y of Health & Human Servs.*, No. 00-357V, 2013 WL 3157525, at *2-3 (Fed. Cl. Spec. Mstr. May 31, 2013) (citing *Kooi v. Sec'y of Health & Human Servs.*, No. 05-438V, 2007 WL 5161800 (Fed. Cl. Spec. Mstr. Nov. 21, 2007)).

The decision in *McCulloch* provides a framework for consideration of appropriate ranges for attorneys' fees based upon the experience of the practicing attorney.  *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015) *motion for recons. denied*, 2015 WL 6181910 (Fed. Cl. Spec. Mstr. Sept. 21, 2015).  For example, an attorney that has been practicing for twenty or more years has an appropriate hourly rate between $350 and $425.  *Id.*  An attorney with eight to ten years of experience, on the other hand, has a reasonable hourly rate between $275 and $350.  *Id.*

## III.   DISCUSSION

### A.  Reasonable Hourly Rate

The first step of the lodestar approach involves determining an estimate by calculating "the numbers of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera*, 515 F.3d at 1347-48 (quotation omitted).  The undersigned has found Mr. Caldwell's requested hourly rates to be reasonable in *Johnson v. Secretary of Health and Human Services*, No. 10-578V, 2017 WL 1881005, at *3 (Fed. Cl. Spec. Mstr. Apr. 14, 2017).  Additionally, the undersigned has found Ms. Stadelnikas and Ms. Toale's requested rates to be reasonable and will award them as such.  *Id.*  The rate request for Ms. Unkel is similarly reasonable.

In *McCulloch*, Special Master Gowen found that it was reasonable to award $135 per hour to each paralegal who was "[a] well-qualified, carefully chosen college graduat[e]" with "several years at the firm doing exclusively vaccine work."  2015 WL 5634323 at *21.  Mr. Caldwell's requests for his paralegals are reasonable, and the undersigned will award them in full.

Before determining a reasonable hourly rate for Petitioner's father and former counsel, Mr. Salvatore DiFazio, the undersigned must determine whether it is appropriate to award Mr. DiFazio attorneys' fees.  In *Underwood*, then-Chief Special Master Campbell-Smith denied attorneys' fees for the brother of the petitioner.  2013 WL 3157525 at *2-3.  Central to the Chief Special Master's analysis was whether an attorney-client relationship existed between the petitioner and her brother.  *Id.* at *3.  Because any evidence of the establishment of such a relationship was "conspicuously absent" from the record, Chief Special Master Campbell-Smith denied attorneys' fees for the petitioner's brother.  *Id.*  In our case, the record shows that Mr. DiFazio entered into an attorney-client relationship with Petitioner.  Mr. DiFazio initially filed Petitioner's claim with the Court and appeared as Petitioner's counsel of record.  *See* Pet.  The invoice submitted by Mr. Caldwell on Mr. DiFazio's behalf shows the legal work undertaken by Mr. DiFazio for his son, including the preparation of his petition and affidavits.  Pet'r's Ex. 37.  This sort of evidence was absent in *Underwood*, and therefore the undersigned finds it appropriate to award Mr. DiFazio an award of attorneys' fees.

Mr. DiFazio requests an hourly rate of $385, placing him in the "20 years or more" category in the *McCulloch* rate schedule.  2015 WL 5634323 at *18.  Although Mr. Caldwell did not submit any evidence of Mr. DiFazio's legal experience to justify his requested hourly rate, Mr. DiFazio's firm's website provides information relevant in deciding a reasonable hourly rate for Mr. DiFazio.  *See* DiFazio Law Office, http://www.spdifaziolaw.com/home.html (last visited Apr. 27, 2017).  Mr. DiFazio graduated law school in 1977 and became a partner in the firm of Golden, Lintner, Rothschild, Spagnola & DiFazio in 1982.  *Attorneys*, DiFazio Law Office, http://www.spdifaziolaw.com/attorneys.html (last visited Apr. 27, 2017).  Mr. DiFazio started the DiFazio Law Office in 1995.  *Id.*  Mr. DiFazio therefore has approximately forty years of legal experience, entitling him to the "$300 an hour to $425" category of attorneys' fees.  2015 WL 5634323 at *18.  Furthermore, Mr. DiFazio practices law in the greater New York metropolitan region, and similarly-situated attorneys in the Program have been found to be entitled to forum rates.  *Michel v. Sec'y of Health & Human Servs.*, No. 14-781V, 2016 WL 7574478, at *3 (Fed. Cl. Spec. Mstr. Nov. 28, 2016).  Given the many years Mr. DiFazio has spent in the practice of law and that he is entitled to forum rates, the undersigned finds Mr.

DiFazio's requested rate to be reasonable. However, the undersigned will reduce Mr. DiFazio's requested rate for two dates.

On July 28, 2009, Mr. DiFazio records two hours for "Preparation of exhibits," and on August 11, 2009, Mr. DiFazio records four and a half hours for "Picking up medical records, copying and compiling exhibit notebooks." Pet'r's Ex. 37. Special masters compensate work that is routinely done by paralegals at a rate found reasonable for paralegals. *See Scharfenberger v. Sec'y of Health & Human Servs.*, No. 11-221V, 2015 WL 3526559, at *12 (Fed. Cl. Spec. Mstr. May 15, 2015). As the work performed on July 28, 2009 and August 11, 2009 is largely secretarial, the undersigned will compensate Mr. DiFazio for these dates at the reasonable paralegal rate found in *McCulloch*. 2015 WL 5634323 at *21. Therefore, Mr. DiFazio will be awarded 19.2 hours at a reasonably hourly rate of $385 and 6.5 hours at a reasonable paralegal hourly rate of $135. Thus, Mr. DiFazio is awarded in total **$8,269.50**.

### B. Hours Expended

The second step in *Avera* is for the Court to make an upward or downward modification based upon specific findings. 515 F.3d at 1348. In a review of Mr. Caldwell's billing records, the undersigned did not find any duplicative billing requests. However, Mr. Caldwell requested his full hourly rate for his travel on August 22, 25, and 27, 2011; January 7 and 10, 2014; and October 10 and 13, 2016. Pet'r's Ex. 35 at 2, 9, 10, 23. Mr. Caldwell additionally requested the full hourly rate for his paralegal's travel on January 7 and 10, 2014. *Id.* at 9, 10. The undersigned follows the Court of Federal Claim's reasoning in *Gruber*, 91 Fed. Cl. at 791, awarding a full hourly rate for travel where an attorney provides documentation that she or he performed work while traveling. *See Amani v. Sec'y of Health & Human Servs.*, No. 14-150V, 2017 WL 772536, at *6 (Fed. Cl. Spec. Mstr. Jan. 31, 2017).

For the travel in August 2011, the undersigned will reduce Mr. Caldwell's requested fee by half for August 22 and 27. On those dates, Mr. Caldwell only recorded "Travel [between Florida and New Jersey] . . . (airport wait and work-usable in-flight time not billed)." Pet'r's Ex. 35 at 2. Similar to *Johnson*, Mr. Caldwell documented the actions for which he did not bill; however, he did not provide specific hourly documentation sufficient for a full award. 2017 WL 1881005 at *3. On August 25, 2011, Mr. Caldwell billed 1.3 hours for "ground travel" to meet his client. Pet'r's Ex. 35 at 2. The undersigned will grant two-thirds of Mr. Caldwell's requested $300 per hour rate for this request. *See Johnson*, 2017 WL 1881005 at *3 (awarding two-thirds requested hourly rate due to opportunity costs inherent in ground travel). The undersigned will also award half of Mr. Caldwell's requested rates for his travel on January 7 and 10, 2014, and October 10 and 13, 2016. On those dates, Mr. Caldwell recorded his air travel between Washington, DC and Sarasota, FL, again noting "work usable airport wait and in-flight time not billed." Pet'r's Ex. 35 at 9, 10, 23. Mr. Caldwell's record for these dates is insufficient for a full award of hourly fees. He requested $300 per hour for the dates in 2014, and $356 per hour for the dates in 2016. *Id.* Mr. Caldwell's paralegal, Christine Coleiro, requested $135 for her travel on January 7 and 10, 2014. *Id.* at 9, 10. Her billing record mirrors that of Mr. Caldwell; therefore, the undersigned will award half of her requested fees. The total of this deduction amounts to $3,380.50.

### C.  Costs

Like attorneys' fees, a request for reimbursement of costs must be reasonable.  *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992).  Petitioner requests $90,439.07 for costs.  Pet'r's Mot. Att'ys' Fees.  Petitioner's expert, Dr. Thomas Morgan, requests $7,100.00 for work surrounding his expert report, and the accounting firm CliftonLarsonAllen, LLP, requests $63,975.85.  *See generally* Pet'r's Ex. 36.  The undersigned will determine the reasonableness of each of these requests in turn.

Dr. Thomas Morgan is a board certified neurologist and a Clinical Assistant Professor of Medicine at Brown University.  Pet'r's Ex. 12, ECF No. 23-2.  Dr. Morgan graduated medical school in 1970 and completed his residency in neurology at Boston University in 1975.  *Id.* at 1-2.  In 2009, Special Master Moran found Dr. Morgan's requested rate of $350 reasonable.  *Morse v. Sec'y of Health & Human Servs.*, No. 05-418V, 2009 WL 1783639, at *3 (Fed. Cl. Spec. Mstr. June 5, 2009), *aff'd*, 89 Fed. Cl. 683 (2009).  Here, Dr. Morgan requests an hourly rate of $400 for the production of his expert report.  Pet'r's Ex. 36 at 21.  Dr. Morgan has ample experience in his field, and, over the seven years since Special Master Moran's finding, Dr. Morgan has increased his rate request by 14%.  Such an increase over that period of time is reasonable, and Mr. Caldwell's request for Dr. Morgan's cost will be awarded in full.

CliftonLarsonAllen's overall costs total $63,975.85, or approximately 70% of Mr. Caldwell's request.  *See* Pet'r's Ex. 36 at 63, 66, 68, 71, 78, 100.  In *Scharfenberger*, Special Master Corcoran found the expert costs of CliftonLarsonAllen to be reasonable.  2015 WL 3526559 at *12-*13.  Special Master Corcoran stated that such costs must be "evaluated from a paying client's perspective . . . . If a hypothetical yet reasonable client would be willing to pay for an expert's report then it is appropriate to award compensation for that expert's report."  *Id.* at *12 (quoting *Torday v. Sec'y of Health & Human Servs.*, No. 07-372V, 2011 WL 2680717, at *2 (Fed. Cl. Spec. Mstr. May 4, 2011)).  The accounting firm's lost wages calculation in *Torday* "constituted some percentage of the settlement sum," therefore, Special Master Corcoran found, it "is logical to conclude that a reasonable client would have been willing to incur such expert costs."  *Id.* at *13. The same analysis applies in this case.  After CliftonLarsonAllen's expert report and their agent's subsequent testimony during the damages hearing, the parties settled.  *See* Decision Proffer 2.  In fact, Respondent forwarded a settlement proposal to Petitioner within a week of the final day of the damages hearing.  Status Rep., ECF No. 105.  The accounting firm's quantitative analyses no doubt were a factor in the parties' settlement.[4]  The undersigned finds the total amount requested by CliftonLarsonAllen, LLP, to be reasonable.[5]  Upon review,

---

[4] As Special Master Corcoran noted in *Scharfenberger*, settlements make it difficult for special masters to determine how helpful an expert report is to the settlement process.  2015 WL 3526559 at *13 (citing *Torday*, 2011 WL 2680687 at *7 (settlement "has the unfortunate side effect of leaving the special master without intimate knowledge of the efforts that take place in reaching the agreement")).  However, the fact that Respondent forwarded a settlement proposal to Petitioner six days after the damages hearing leads the undersigned to believe that Petitioner's expert's testimony and report were instrumental to the parties' final agreement.  *See* Status Rep., ECF No. 105.

[5] The undersigned finds the total amount charged by CliftonLarsonAllen, LLP, to be reasonable.  The undersigned therefore makes no decision as to the reasonableness of the hourly rate charged or hours expended by the firm.

the undersigned finds Petitioner's other costs to be reasonable.   Therefore, the undersigned will award Petitioner's costs in full.

## IV.     CONCLUSION

In accordance with the Vaccine Act, 42 U.S.C. § 300aa-15(e) (2012), the undersigned will award the total $232,851.17 as follows:

- **$224,581.67**[6] **to be issued in the form of a check payable jointly to Petitioner and Petitioner's counsel, F. John Caldwell, Jr., of Maglio Christopher & Toale, for attorneys' fees and costs; and**
- **$8,269.50**[7] **to be issued in the form of a check payable jointly to Petitioner and Petitioner's former counsel, Salvatore P. DiFazio, of the Law Office of S.P. DiFazio, for attorneys' fees and costs.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court **SHALL ENTER JUDGMENT** in accordance with the terms of the above decision.[8]

**IT IS SO ORDERED.**

s/Herbrina D. Sanders
Herbrina D. Sanders
Special Master

---

[6] This amount is intended to cover all legal expenses incurred in this matter.  This award encompasses all charges by the attorney against a client, "advanced costs" as well as fees for legal services rendered.  Furthermore, § 15(e)(3) prevents an attorney from charging or collecting fees (including costs) that would be in addition to the amount awarded herein.  *See generally Beck v. Sec'y of Health & Human Servs.*, 924 F.2d 1029 (Fed. Cir.1991).

[7] *See supra* note 6.

[8] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of a notice renouncing the right to seek review.